LANDRY, Judge.
This is an appeal from an opinion of the Civil Service Commission (sometimes hereinafter referred to simply as “Commission” or “the Commission”) affirming the discharge of appellant, Ben Barnes, from the position of Assistant District Engineer, Construction, District 04, by appellant’s employing authority, the Department of Highways, State of Louisiana (sometimes hereinafter referred to simply as “the Department”), appellant’s said dismissal being predicated upon his alleged improper and unauthorized diversion of materials known as “hot mix” from Federal Aid Highway Construction projects to state maintenance work.
The Department’s letter of discharge dated April 12, 1962, set forth five separate charges of reputed misconduct on appellant’s part. One of said charges was voluntarily withdrawn, two were found by the Commission to have been disproved by appellant and the remaining two were adjudged to have been established. In essence, appellant’s appeal to the Commission consisted of a general denial of all charges and, in addition, tendered the defense the charges, if true, did not constitute legal cause for the disciplinary action taken.
After disposing of various preliminary motions advanced on behalf of appellant, the Commission proceeded to a hearing of the evidence on July 25, 1962, following which the appeal was taken under advisement and an opinion subsequently rendered August 14, 1962, in which the Commission found the following facts and reached the following conclusions:

“FINDINGS OF FACT

“Appellant, during December of 1957, instructed a subordinate employee to improperly issue and hand to him delivery receipts for hot-mix asphalt, showing delivery to the Homer-Haynesville Highway in Claiborne Parish, a Federal Aid Construction Project, advising the subordinate that *257 the mix would be used for maintenance purposes on other State highways, all as set forth in the second paragraph of the dismissal letter. Over 600' tons of this mix were so delivered to State maintenance trucks and charged to the Federally aided construction project, although no records of this diversion were kept. There is no proof that the mix was used other than for State maintenance work.
“Appellant, while in charge of Federal Aid construction of the Coushatta-Ninock Highway in Red River Parish, during 1957 and 1958, instructed a subordinate to improperly issue and hand to appellant delivery receipts for hot-mix asphalt showing delivery to the construction project, advising the subordinate that the mix would be used for maintenance purposes on other State highways, all as set forth in the fourth paragraph of the dismissal letter. Approximately 500 tons of this mix were so delivered to State maintenance trucks and charged to the Federally aided construction project, although no records of this diversion were kept. There is no proof that the mix was used for other than State maintenance work.
"Appellant disproved the charges contained in the third and sixth paragraphs of the letter of dismissal; the fifth paragraph, as previously stated, was dismissed by the Department; and the other paragraphs contain only conclusions of law.
“During 1957 and 1958, a practice existed in District 04 of the Highway Department of using hot asphalt mix, which was charged to construction projects, for maintenance projects. This was a practice not used in other Districts, and the State headquarters was unaware of the practice. The evidence is to the effect that no superior instructed appellant to institute this practice, and the practice was discontinued prior to the time that it was called to the attention of the State headquarters and after appellant concluded that similar practices had been discovered in other states. The methods used to record the diversion of material were designed to conceal same from the auditing department, and prevented the Highway Department from accurately determining the cost of construction or maintenance. The practice resulted in the payment of a portion of the cost of maintenance by Federal funds dedicated solely to construction costs. Under such conditions, all Federal highway funds may be withheld from the State.

“CONCLUSIONS OF LAW

“The facts as charged and found in the second and fourth paragraphs of the letter of dismissal constitute conduct in the performance of duties so detrimental to the efficiency of the service and the interest of the State as to warrant appellant’s dismissal. The record discloses that the action of the appointing authority was not arbitrary, unreasonable nor discriminatory, but was taken only after a thorough investigation and prudent deliberation.”
For all practical purposes the Commission’s findings of fact are conceded by appellant to be correct. A clearer understanding of the several issues herein raised by appellant will, we believe, be afforded by a more detailed narration of the facts and circumstances revealed by the evidence concerning which there is little, if any, dispute.
It appears that on all construction projects involving the use of “hot-mix” the material is bid on a per ton unit basis which includes the material hauled to and spread upon or applied to the highway. In such instances the contractor either sets up what is known as a “hot-mix plant” to produce the material or makes arrangements with a supplier who has such facilities. In either event, the contractor’s trucks are loaded at *258 the plant and the material is hauled to the project site and spread upon or applied to the surface of the highway in the manner called for in the contract. As each truck is loaded the material therein is weighed and checked by a state employee known as an "inspector” stationed at each such plant. After determining the tonnage in each truckload, the Inspector issues the contractor a delivery receipt for the quantity of material indicated. The delivery tickets thus issued constitute “money” to the contractor inasmuch as they are presented to the appropriate section of the highway department where the contractor receives, in return therefor, the department’s check aggregating the unit contract price for the amount of material indicated thereon.
Appellant concedes that on the two projects in question he personally ordered the inspector on duty to issue the contractor delivery tickets evidencing delivery of approximately 668 tons of hot mix for the Homer-Haynesville job and approximately 500 tons for the Coushatta-Ninock project whereas said material was in truth and fact loaded onto state maintenance trucks and presumably used for highway maintenance purposes, although appellant was unable to give the exact destination of such diverted material. Appellant further concedes no record was kept of such diversions and there is presently, so far as appellant knows, no basis on which the exact amount of such diversions could be computed.
Appellant maintains, and there is nothing in the record before us to indicate the contrary, he did not personally profit from the practice shown. The exact manner in which the diversions were accomplished is not made entirely clear by the record. We understand, however, Barnes, in ordering issuance of the questionable delivery tickets, deducted from the contractor’s unit price the estimated value of hauling and spreading the material since the contractor neither hauled nor applied the diverted material. According to Barnes, hauling and spreading costs varied from $1.00 to $1.25 per ton. The discrepancy resulting from the deduction of hauling and spreading cost was apparently handled in the following manner: The value of the diverted material was computed at the contractor’s total unit price from which was deducted the estimated per ton cost of hauling and spreading. The contractor was issued tickets evidencing delivery of material in such quantity as, at the contract price, would equal the adjusted value of the diverted material determined as hereinabove shown. In each instance the state presumably received more material than indicated by the delivery tickets issued the contractor because, ostensibly, the state was “purchasing” the material at less .than the contractor’s unit price for material incorporated on the construction project.
The only issue in dispute is whether appellant ordered the aforesaid diversions upon instruction from higher authority. In this regard appellant maintains he received such instructions from R. H. Vaughn, State Construction and Maintenance Engineer, now deceased, said instructions being received in the presence of E. M. Gillen, District Engineer, and John H. Stinson, Jr., Assistant District Engineer.
Appellant further acknowledges he voluntarily discontinued the aforesaid practice in late 1960, because of reports reaching him to the effect disclosure of such procedure in other states resulted in investigations by the Federal Government. The Department concedes appellant remained in its employ for more than two years following cessation of the practice, during which interval appellant’s services were satisfactory but contends, however, upon disclosure of appellant’s conduct to the Director an investigation was immediately launched resulting in appellant’s dismissal.
In accordance with Rule XVI of the Uniform Rules of the Courts of Appeal, 8 LSA-R.S. appellant filed an Assignment of Errors with his application for appeal specifying nine alleged errors which will be discussed separately.
The first alleged error is the contention use of the word “improperly” in the first *259 two paragraphs of the Commission’s Findings of Fact is not a fact but a conclusion of law instead. In this connection it is further argued such conclusion is not supported by the Commission’s finding of fact considering the Commission further determined the alleged improper practice with which appellant was charged existed in the district during the years 1957 and 1958, this latter finding implying the practice in question was the norm and accepted standard for proper conduct.
Appellant’s contentions in this regard are patently without merit. The word “improperly” is indeed a conclusion of law and as such constitutes mere sur-plusage in the Commission’s findings of fact. Nevertheless, the Commission’s conclusion that the practice shown was improper is thoroughly consistent and compatible with the Commission’s other conclusions of law designated as such. Similarly without merit is the contention the finding of the Commission to the effect the practice existed in District 04 during 1957 and 1958 carries the implication such practice was the accepted standard for proper conduct. The Commission found as a fact that the practice in question bore no official sanction; it was unknown to appellant’s superiors and was confined exclusively to appellant’s district. In essence, the Commission found the practice existed solely by virtue of what the Commission considered wrong doing on the part of appellant and certain other employees of the Department. In this regard the Commission’s finding is clearly supported by the evidence. While the Commission’s conclusions do not indicate whether such wrongdoing was deliberate and with intention to defraud or merely the result of indifference on the part of those involved, it nevertheless clearly appears the Commission found defendant was in part responsible for the practice through his own independent decision to indulge therein and also that appellant ultimately realized the gravity of the matter and voluntarily desisted therein. The fact that the record reveals certain associates of appellant were aware of and participated in the practice of diverting materials from construction to maintenance projects does not establish the propriety of such conduct. In this respect the record clearly shows the procedure followed was unauthorized, unacceptable to higher echelons of authority and exposed the state to consequences ranging from the obligation to repay the Federal Government the value of material thusly diverted to total loss of Federal Aid with respect to road construction as found by the Commission.
Appellant’s second assignment of error is that the testimony of record does not support the Commission’s finding “The evidence is to the effect that no superior instructed appellant to institute this practice.” It is now the well settled jurisprudence of this state that pursuant to the authority contained in LSA-Constitution Article 14, Section 15(0) (1), the Commission’s decision on issues of fact is final, and appeals from the judgments of the Commission are limited to questions of law. It is also well settled the decisions of the Commission may not be disturbed where there exists in the record substantial evidence in support thereof. Cunningham v. Caddo-Shreveport Health Unit, Etc., La.App., 141 So.2d 142, and authorities therein cited.
Appellee called as witnesses all of appellant’s superiors who are still living and each denied authorizing the practice of diverting materials and additionally disclaimed all knowledge of the prevalence of such practice in District 04. As opposed to the testimony of said witnesses, appellant deposed he was given such instructions by the late R. H. Vaughn, Construction and Maintenance Engineer, in the presence of E. M. Gillen, District Engineer, and John H. Stin-son, Jr., Assistant District Engineer, Maintenance. Both Gillen and Stinson testified Vaughn told them in Barnes’ presence to “help out maintenance”, from which they understood the order to mean the extension of general cooperation.
*260 While it is quite true the jurisprudence holds the ruling's of the Commission are subject to reversal by the courts on issues of fact when the record is devoid of evidence in support thereof, see Hays v. Wild Life and Fisheries Commission, La. App., 136 So.2d 559, and cases therein cited, we do not understand, however, the rule places upon the employing authority the burden of disproving the employee’s affirmative defense, particularly where the principal witness who could affirm or deny the fact upon which such defense rests is deceased. Moreover, the commission of wrongful conduct under instruction from superiors does not relieve the wrongdoer from responsibility therefor where he has reason to know the practice is irregular and improper and he does not question such instructions or orders.
In essence appellant’s third assignment of error is to the effect the Commission’s ruling is tantamount to a retroactive or ex post facto application of standards of conduct. In this respect appellant contends the effect of the present ruling is to apply current standards and concepts of morality to former conduct and on the basis of such retroactive application of principles declare prior actions to be wrong and improper notwithstanding such actions were deemed entirely proper at the time of their commission. The argument is patently without foundation since it must assume the conduct complained of was not wrong or improper when performed. This assumption is clearly refuted by the evidence in that it is shown all appellant’s superiors regarded the conduct in question as highly improper and irregular at the time of its performance and further indicates had they known of the practice, it would have been stopped immediately because it presented' a false picture of construction costs. Moreover, the argument seems to further assume wrongful conduct becomes acceptable when engaged in with impunity over a protracted period of time. With such a premise we are not in agreement.
In the fourth assignment of error, appellant complains there is no foundation for the finding of the Commission that the methods employed to record the diversion of material were designed to conceal the practice from the Department’s auditing section. In this respect appellant is correct only to the extent the record is barren of evidence establishing express intent or design to conceal the procedure which resulted in appellant’s dismissal. It does appear, however, the practice effectively prevented the Department from correctly determining construction cost of the projects involved and resulted in the State’s charging to the cost of certain projects (a percentage of which was reimbursed from federal funds) the value of materials which were not in fact incorporated into the finished highways. It further appears no method was employed to record the diversions in question, nor was there any proper accounting procedure for recording such unauthorized practice. In fact appellant readily concedes the diversions were not recorded or reported at all.
Notwithstanding absence of proof of specific intent to conceal the admitted practice of diversion, it nevertheless does appear false delivery tickets were issued contractors in representation of hot-mix purportedly incorporated in construction projects but which material in truth and in fact was used for other purposes, namely, maintenance of highways. In this connection, it appears the proper procedure for securing maintenance material was the issuance of purchase orders which could be issued only in limited amounts because purchases so made were subject to state laws requiring advertisement for bids in the event of purchase of materials in excess of certain amounts. Appellant frankly concedes neither appellant nor the maintenance engineer followed the accepted and authorized procedure of issuing district purchase orders for the materials in question. Appellant, who was in charge of construction, should not have ordered the diversion of materials from his department to maintenance. It is *261 contended any auditor or accountant who visited District 04 should have known of the practice but we fail to see wherein such conclusion finds support in the case at bar considering no record was kept of such diversions and considering further all delivery tickets improperly ordered issued by appellant showed on their face the materials represented thereby were incorporated in construction projects. Moreover, assuming arguendo, an accountant collaborated with appellant in perfecting the unauthorized practice shown, it constitutes no extenuation of appellant’s part therein.
Appellant’s fifth assignment of alleged error is that the Commission’s findings of fact do not support all charges contained in the second and fourth paragraph of the Department’s letter of dismissal hereinabove set forth in full and also that the facts found do not support the conclusion appellant’s conduct was so detrimental to the efficiency of the Department’s service as to warrant appellant’s discharge.
It is now well settled jurisprudence that the Commission’s factual findings do not necessarily have to agree in every respect with the charges set forth in the employing authority’s notification of dismissal or disciplinary action. Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5. It suffices if some of the alleged causes for dismissal are established to be true and such causes or reasons constitute legal ground for dismissal or disciplinary action. Leggett v. Northwestern State College, supra.
The second aspect of alleged error Number Five is predicated upon the meaning of the word “efficiency” as regards the conduct of appellant. As pointed out by esteemed counsel for appellant, the Commission did not find appellant was inefficient in the performance of his duties. It did find, however, his conduct was detrimental to the efficiency of the Department’s service. The question was not whether the conduct complained of impaired appellant’s efficiency but whether the efficiency of the service was impaired as a result thereof. In this respect we note the finding the practice in question prevented the Department from accurately determining the cost of construction or maintenance.and exposed the State to possible loss of all Federal Aid highway funds and the express conclusion such conduct was so detrimental to the efficiency of the service and interest of the state as to warrant the dismissal ordered.
The sixth and eighth assignments of error are to the effect there is nothing in the record to support the conclusion appellant’s conduct was detrimental to the interest of the state because there was in fact no showing the Department’s efficiency was in any way impaired and neither was it shown appellant’s conduct subjected the state to the possible loss of all Federal Aid Highway funds. It has already been herein shown the procedure indulged in by appellant rendered impossible an accurate accounting as between funds expended on construction projects and those spent on maintenance. The interest of the state and the efficient operation of its numerous departments demands that those officials and employees charged with the expenditure of public funds accurately account therefor in accordance with approved, acceptable, authorized and recognized budgetary procedure, principles and methods. No practice may be countenanced which will impede, frustrate or render inoperative budgetary and accounting principles authorized and directed by the various department heads in conformity with legislation governing such matters. Unless such principles and procedure are observed, all control of expenditure of public funds would be lost to the state and other appropriating authorities. It is elementary the efficiency of any department of the state is directly related to the control exercised over the funds placed at its disposal to enable fulfillment of its objects and purposes. Loss of control of allocated funds will not only impair the efficiency of any department but, in our opinion, seriously so. For such obvious reasons no employee may be permitted *262 to disregard at will established accounting and fiscal procedure and substitute in lieu thereof innovations of their own irrespective of the possible consequences of such deviation. Regarding the alleged lack of proof concerning the possible loss of Federal Aid funds for highway construction purposes, appellant maintains no Act of Congress, court decision or authoritative regulation was introduced to support the conclusion such diversion of funds subjected the state to the possible loss of Federal Aid funds. We note that Mr. Ray W. Burgess, Director of the Department of Highways, was called as a witness on behalf of the Department. Mr. Burgess detailed the possible consequences of diversion of materials from federally supported projects, one of such being the suspension of all Federal Aid to the state for highway construction purposes. The testimony of Mr. Burgess in this connection certainly constitutes evidence. It further appears no objection was offered thereto. Under the circumstances, we cannot conclude the ruling complained of is utterly without evi-dentiary basis in the record.
The seventh alleged error is that the Commission failed to consider the weight and degree of punishment imposed on appellant herein by the appointing authority. Unquestionably, as contended by appellant, the Commission has the authority to alter or change the penalty imposed upon a classified employee by his appointing authority. LSA-Const. Article 14, Section 15 (O) (1); Brickman v. New Orleans Aviation Board, 236 La. 143, 107 So.2d 422; Simmons v. Division of Employment Security, La.App., 144 So.2d 244. It is equally well established jurisprudence the Commission is under a duty not only to determine whether there is a real and substantial relation between the conduct of the employee and the efficient operation of the public service, but also to determine whether the disciplinary action imposed by the appointing authority is just and proper under the circumstances, that is, whether the dereliction is such as to justify the punishment ordered. Simmons v. Division of Employment Security, supra, and authorities therein cited. Succinctly stated it is appellant’s contention his discharge constitutes harsh and excessive punishment considering his many years of efficient service and considering further (according to appellant) no harm or injury has been shown to have resulted to the state from his said actions. Appellant further maintains that in view of the aforesaid circumstances the Commission shirked its duty to equate the punishment to the gravity of his offense and had the Commission performed its duty in this respect, the Commission should have set aside appellant’s discharge and ordered punishment less severe. We find no merit in the contention the Commission failed its obligation in the respect mentioned. After finding the facts as hereinabove set forth, the Commission, in its conclusions of law, expressly found "The facts as charged and found in the the second and fourth paragraphs of the letter of dismissal constitute conduct in the performance of duties so detrimental to the efficiency of the service and the interest of the State as to warrant appellant’s dismissal.” (Emphasis supplied by the court). In view of said express conclusion we find the Commission discharged the duty incumbent upon it by virtue of LSA-Const. Article XIV, Section 15 (0) (1) to determine whether or not appellant was discriminated against in that his punishment was unduly harsh and excessive. Said conclusion represents the independent finding of the Commission and satisfies the obligation incumbent upon the Commission to review the question of whether the penalty imposed is warranted by the circumstances of each individual case.
Appellant’s ninth and final assignment of error is to the effect the conduct shown did not constitute adequate cause for any disciplinary action, as there was no real or substantial relation between the assigned cause for dismissal and appellant’s ability and qualifications to properly and effectively perform his duties. As herein previously shown such is not the test. The true *263 criterion is whether the assigned cause for dismissal hears a real and substantial relation to the efficient operation of the service. The most efficient and competent employee may be guilty of conduct which, even though it bears no relation whatsoever to the efficient performance of his regularly assigned duties, is so highly irregular and improper as to substantially impair the efficient operation of the service in which he is engaged and of which he forms a part. Irrespective of his normal and ordinary degree of efficiency and competency no employee may escape disciplinary action for conduct viola-tive of rules, regulations or statutes whose purpose is to promote honest, efficient and lawful conduct of the various state services. No matter how efficient an employee may otherwise be, any conduct on his part which endangers or jeopardizes the interest or welfare of the state subjects him to disciplinary action. Any other view would simply clothe the efficient employee with immunity for any wrongful or immoral act.
For the reasons hereinabove assigned, the ruling of the Commission is affirmed.
Affirmed.