169 So.2d 641 (1964)
Louis VIDRINE
v.
STATE PARKS AND RECREATION COMMISSION.
No. 6213.
Court of Appeal of Louisiana, First Circuit.
November 16, 1964.
Rehearing Denied December 21, 1964.
Writ Refused February 5, 1965.
*643 Dodd, Hirsch, Barker, Avant & Wall, Baton Rouge, for appellant.
Gordon Goodbee, Covington, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
LANDRY, Judge.
The appeal herein is on behalf of plaintiff, Louis Vidrine, (a State Civil Service Employee enjoying permanent status), seeking reversal of a decision of the State Civil Service Commission, State of Louisiana, (sometimes hereinafter referred to simply as "Commission"), affirming and refusing to set aside appellant's dismissal from the position of Park Ranger by appellant's employer, Louisiana State Parks and Recreation Commission, defendant-appellee, (sometimes hereinafter referred to simply as "appointing authority").
Under date of September 19, 1963, L. A. Talley, Director of defendant Appointing Authority, gave appellant written notice of dismissal effective September 30, 1963, for numerous alleged acts of misconduct, incompetence, insubordination and disobedience of orders involving primarily the reputed misuse of official auto vehicles for appellant's personal convenience, repeated absence from work during normal working hours and failure to report daily to appellant's immediate superior, Johnson, upon appellant's arrival and departure from work, as instructed. Subsequent to the effective date of plaintiff's said dismissal, namely, October 2, 1963, Talley wrote the Commission requesting appellant's reinstatement predicated upon the averment plaintiff's initial discharge was based on information furnished Talley by plaintiff's aforesaid immediate superior, Johnson, which charges were found by Talley to be without basis as the result of an investigation conducted by Talley following his letter of dismissal to appellant.
The Commission declined to reinstate plaintiff taking the position that under the provisions of LSA-Constitution Article 14, Section 15, known as the Civil Service Amendment (sometimes hereinafter referred to as "the Amendment"), plaintiff, having been discharged, could only be reinstated by virtue of a successful appeal as provided for in the Amendment or by request for reinstatement approved by the Commission. Plaintiff thereupon timely perfected the present appeal and the matter was set for hearing November 13, 1963.
At the hearing appellant produced Director Talley who testified, in substance, he was in error in discharging appellant inasmuch as subsequent investigation disclosed the charges (based on information furnished by Johnson) were without foundation. *644 It developed that the investigation conducted by Talley consisted of his receipt of a report of an investigation conducted by another source and the production of affidavits of certain departmental employees to the effect they had no knowledge of the misconduct attributed to plaintiff by Johnson. The Commission thereupon decided to continue the hearing, rescheduling it for December 10, 1963, in order that it might produce other witnesses. Following completion of the hearing the Commission concluded the charges against appellant were well founded and declined to order plaintiff's reinstatement.
Learned counsel for appellant contends the Commission erred in the following respects: (1) Ignoring the Appointing Authority's letter of reinstatement and applying the Commission's rule regarding reinstatement which rule is illegal, null, void and unconstitutional; (2) Arbitrarily refusing to reinstate appellant notwithstanding the admission of the Appointing Authority that appellant's initial discharge was without cause; (3) Terminating and continuing the hearing of November 13, 1963, for the purpose of summoning the Commission's own witnesses thereby assuming the role of prosecutor, investigator and court thus converting the appeal from an adversary proceeding between appellant and Appointing Authority to one between plaintiff and the Commission contrary to the Amendment and the due process clause of our state and federal constitution; and (4) Affirming appellant's dismissal upon insufficient evidence consisting solely of the biased and prejudicial testimony of Johnson.
Regarding contentions one and two, supra, esteemed counsel for appellant in substance argues that the Commission's jurisdiction and authority under the Amendment is two-fold, namely, it is an appellate tribunal pursuant to Section 15 (O) (1) and an investigatory body as prescribed in Section 15(O) (2). Counsel argues that under Section 15(N) (1) only an appointing authority may dismiss an employee for cause expressed in writing and in such instances the authority of the Commission is to hear the employee's appeal therefrom as set forth and guaranteed in Section 15(O) (1) and (2). It is counsel's position that under Section 15(O) (4) the Commission has the right to instigate investigations of its own but is therein specifically limited to investigations of alleged violations of the Amendment itself. On these premises counsel argues the Commission has no authority on its own initiative to discharge an employee for alleged misconduct with his employment unless it constitutes a violation of the amendment and the misconduct charged against appellant does not fall in that category. Therefore, reasons counsel, upon withdrawal of the charges against plaintiff by his appointing authority, the Commission was without authority to proceed further and should have reinstated plaintiff as recommended by his appointing authority especially considering said employer's admission the charges against appellant were groundless. It is next contended that in refusing to follow the recommendation of reinstatement, the Commission did so pursuant to a rule (Rule 8.18(a)) which is illegal, null and void but counsel does not specifically inform the Court as to the respects in which it considers the applicable rule invalid.
Neither the Commission nor Appointing Authority has favored this court with a brief.
Before considering the arguments of counsel for appellant it is believed advisable to refer to certain applicable provisions of the amendment.
In effect Section 15 (N) (1) of the amendment provides that a Classified Employee may not be dismissed or otherwise disciplined except for cause expressed in writing by his appointing authority. While this section does not expressly prohibit the Commission from filing charges against an employee neither does it authorize the Commission to impose disciplinary action on *645 its own initiative. On the other hand, however, Section 15(O) (4) which specifically empowers the Commission to conduct investigations, places an obvious limitation upon the Commission's authority in this regard in that the pertinent portion thereof reads as follows:
"(4) Violations; investigations; hearings; suspension or dismissal
"The State and each City Civil Service Commission may, at any time, upon its own initiative, investigate any violation by any person of the provisions of this section * * *. If the appropriate Commission, after public hearing in an investigation instituted either on its own initiative or after charges, shall determine that the person or persons under inquiry have violated any of the provisions of this section, the appropriate Commission is empowered, in its discretion, to direct the appointing authority * * * forthwith to suspend * * * or to dismiss such officer or employee * * * as directed by the Commission." (italics by the Court.)
The purpose of the Amendment is to insure efficiency in governmental operations by providing security of employment thus enabling the state to take advantage and reap the benefits of experience gained by those employees of long service. In addition, the Amendment removes state classified positions from the evil effects of the "spoils system" thus inculcating a sense of devotion to duty, promoting honesty, loyalty and interest on the part of the Classified Employee. To gain these ends the Commission has been given those powers which are explicit in the Amendment or reasonably implied by the announced purposes as well as the spirit thereof as determined by its provisions as a whole.
Our careful consideration of the Amendment in its entirety leads to the conclusion that nowhere in either its letter or spirit does it authorize the Commission to institute charges for dismissal or other disciplinary action save and except for violations of the Amendment itself. The authority contained in Section 15(O) (1) and (2) refer solely and exclusively to the appointing authority whereas the provisions of Section 15(O) (4) unambiguously restrict the investigatory authority of the Commission to violation of "the provisions of this section" which can only mean the Amendment. We detect nothing in any other section of the Amendment indicative of intent to grant the Commission authority to take disciplinary action against a Classified Employee for causes other than those constituting a violation of the Amendment. Nor do we detect in the spirit of the Amendment anything reasonably requiring that the Commission have initial disciplinary powers with respect to employees accused of misconduct not constituting a violation of the Amendment or the Commission's rules adopted in compliance with the Amendment.
We note, however, the rule making power of the Commission which is set forth in Section 15(I) of the Amendment and note specifically that such rules, which have the effect of law may encompass numerous aspects of state employment.
"* * * including, but not by way of limitation, rules * * *; (5) providing for the filling of vacancies in the classified service by demotion, transfer, reinstatement, reemployment * * *." (Emphasis by the Court.)
While we agree with esteemed counsel for appellant that the Commission may not institute charges of its own for causes not constituting a violation of the Amendment, it does not follow that when the appointing authority sought plaintiff's reinstatement the Commission was without authority to hear the appeal or proceed further in the matter. The attempt of the appointing authority to withdraw the charges in question did not leave the record without charges with respect to appellant as argued by counsel. The attempted reinstatement occurred subsequent to the effective date of appellant's *646 dismissal. It follows that upon the effectiveness of his discharge plaintiff's remedy was two-fold. He could either appeal (which he did) or apply for reinstatement (which his appointing authority did on his behalf). When plaintiff's discharge became a fait accompli on September 30, 1963, the appointing authority was without right to reinstate him except in accordance with the Commission's rules. Upon his discharge by an appointing authority an employee's rights regarding reinstatement and reemployment are determined and governed according to the procedure set forth in the Amendment and appropriate Commission rules adopted in conformity therewith. It is not, however, the function of the Commission to institute disciplinary action against classified employees for inefficiency or insubordination; such is basically and primarily the duty and concern of the appointing authority having immediate direct control and supervision of the employee and therefore best able to judge and determine such factors. It appears obvious that if such a duty did devolve upon the Commission, it could not reasonably or logically discharge the burden of its enforcement.
As herein previously shown the rule making power of the Commission, as contained in Section 15(I) of the Amendment, which has the effect of law, expressly includes the right to make rules regulating reinstatement and reemployment of employees. It is to be further noted the hereinabove cited applicable rule adopted by the Commission clearly provides that an employee discharged for cause shall not be reinstated without the Commission's approval. Such a rule is clearly within the Commission's express and implied authority inasmuch as it is the duty of the Commission to enact rules which shall insure the orderly and impartial administration of the Amendment. To deny the Commission authority to enact the rule in question is to open the door to circumvention of the Commission's lawful orders by the simple expedient of enabling employees in the favor of persons of high political office to gain their reinstatement by the exercise of political influence notwithstanding their prior dismissal for cause. To prevent such possible favoritism the Commission is authorized to make rules which will avert situations tantamount to a mockery of the Amendment's purposes. Not only is the rule necessary to accomplish a stated function of the Commission, it is likewise reasonable and well calculated to fulfill its legitimate objective. We hold, therefore, it is the duty of the Commission to adopt and enforce reasonable rules governing the reinstatement of employees discharged for cause and the rule in question does not exceed its regulatory or rule making power.
The argument that the Commission had no authority to continue the hearing and summon witnesses to substantiate the charges against appellant, considering the admission by the appointing authority that the charges were groundless, is without merit. Equally without merit is counsel's asseveration that such action on the Commission's part was illegal and unconstitutional in that it constituted the Commission prosecutor, investigator and court transforming the hearing from an adversary proceeding between appellant and appointing authority to a controversy between appellant and the Commission contrary to the Amendment and the due process clauses of the State and Federal Constitutions.
Even a casual reading of the Amendment discloses intent to grant the Commission authority to supervise all aspects of employment, reinstatement and reemployment of Classified Employees so that fairness and impartiality in the treatment of such employees shall prevail as far as humanly possible in each individual instance.
The right to hear appeals from dismissals is granted exclusively to the Commission, subject to judicial review on questions of law only, Section 15(O) (1) of the Amendment. It is now well settled *647 that where the Commission's factual determinations are supported by substantial evidence of record, such findings are binding upon the Courts and not subject to judicial review. Cunningham v. Caddo-Shreveport Health Unit, La.App., 141 So.2d 142; Barnes v. Department of Highways, La. App., 154 So.2d 255.
We believe the unmistakable intent of the Amendment as a whole is that the Commission shall be as zealous in effectuating the disciplining or removal of employees charged with and convicted of incompetency, inefficiency or wrongdoing as it shall be diligent and alert to protect the rights of those against whom an appointing authority may be inclined to discriminate. it is to be noted that among the Commission's rule making powers Section 15(I) (8) authorizes the Commission to fix the procedure, the time within which appeals must be taken and all other matters pertaining to appeals. To perform its functions the Commission is expressly granted authority to administer oaths, summon witnesses and compel production of books and papers pertinent to appeals, Section 15 (O) (5).
While the function of the Commission as regards appeals taken pursuant to Section 15(O) (1) is judicial in nature, it is not, by the very nature of things entirely so. In substance its capacity in this regard is quasi-judicial in that when an appeal is lodged, it is the duty, province and function of the Commission to conduct the hearing thereof in such manner as will insure compliance with the purpose and intent of the amendment. To deny the Commission the right to summon witnesses on its own initiative can only serve to enable possible violations of the letter as well as the spirit of the Amendment. For example (not necessarily applicable to the case at bar), an appointing authority having made charges warranting dismissal could thwart proper application of the amendment by withholding evidence in substantiation thereof. Granted the Commission does to some degree act as prosecutor in such instances, nevertheless we believe its dual role in this regard clearly falls within the contemplation of the Amendment. Nor do we detect in such circumstances any violation of the employee's constitutional right of due process. The right of appeal is clearly granted the employee from the decision of the Commission. Although the factual findings of the Commission are binding upon the Court, such rule applies only where there is substantial evidence of record to support such conclusions. The rules of the Commission as well as all questions of law arising from the appeal are subject to judicial review. Thus, at every turn the constitutional right of the employee to due process of law and impartiality of treatment is fully protected. The summoning of witnesses by the Commission on its own initiative does not transform the proceeding into an adversary matter between the employee and Commission as contended by counsel for appellant; such action is merely the exercise of the Commission's authority to obtain the true facts on appeal so that its decision may rest on substantial evidence.
There remains appellant's final contention the Commission's findings are not supported by substantial evidence of record.
The Commission found as follows:

"FINDING OF FACTS
"1. L. A. Talley, having been advised by Dudley Johnson that he was unable to render a periodic service rating on appellant, Louis Vidrine, since appellant had not been regularly at his place of work in Chicot State Park, went to said park on May 27, 1963, and, there, in the presence of Dudley Johnson, Superintendent of the park and appellant's immediate superior, and of Edgar Buller, a member of the State Parks and Recreation *648 Commission, instructed appellant that he was required, henceforth, to report at the beginning of each working day to Dudley Johnson and that he was to report to him at the end of each working day. Mr. Talley further instructed appellant that he was not to take the Park Commission pickup truck, assigned to him for his use in his work, outside the park area without specific permission of Dudley Johnson.
"2. Dudley Johnson, the immediate superior of appellant, thereafter kept a meticulous record of the activities of appellant from May 28, 1963, to August 31, 1963, and during that period of time appellant, on numerous occasions, failed to report to Mr. Johnson as instructed; in many instances he reported not at all during a day; in other instances he reported either in the morning or in the afternoon but not both; on a number of occasions he was observed by Mr. Johnson outside the park area in the Park Commission vehicle without having obtained permission from Mr. Johnson to take the vehicle outside the park area. These observations were made not only on the public highways near the park but also in one or more of the municipalities located a number of miles from the park. In short, the evidence established the verity of almost all of the charges contained in the discharge letter of September 19, 1963.
"3. The fellow employees, who signed the affidavit to the effect that Vidrine was on duty at the times questioned and that his work as a Park Ranger was satisfactory, did not, in their testimony before this Commission, refute the charges made, and, indeed, it was established that their places of work in the park were such that they were not in a position to know whether appellant had complied with the instructions given him by Mr. Talley."
As found by the Commission, Johnson's testimony was to the effect he experienced difficulty with appellant in that appellant declined to report each morning upon commencing work and each afternoon when his duties were finished. Moreover, although plaintiff's duties were confined principally to the boundaries of Chicot State Park, Johnson frequently observed appellant on the public highway en route either to or from Ville Platte during working hours when appellant should have confined his activities to the park. Eventually, appellant's conduct was brought to the attention of Talley who, on or about May 27, 1963, arranged a conference with Johnson and appellant at which it was made clear to plaintiff that plaintiff was to report daily to Johnson upon arrival for work in the morning and departure therefrom in the afternoon and, in addition, plaintiff was not to use the park vehicle entrusted to him for anything except activities connected with plaintiff's official duties. Subsequent to this meeting Johnson kept a daily written account of plaintiff's activities wherein he noted the instances upon which plaintiff failed to report either in the morning or afternoon as instructed. In addition, his notes showed numerous instances when appellant was absent from work without Johnson's knowledge or permission for the purpose of attending to some personal matter or engaging in the sport of hunting. On still other occasions, all carefully noted by Johnson, appellant was seen in the truck entrusted to appellant for official use upon the public highways en route to or from Ville Platte or in other vicinities where appellant's work did not take him. Johnson also reported instances wherein appellant frankly acknowledged appellant was absent from duty in the park attending to some personal matter or running an errand for a friend or acquaintance. It suffices to say that between May 28, and August 31, 1963, the record kept by Johnson reveals numerous, repeated violations of the instructions given appellant May 27, 1963.
*649 Appellant's testimony seeks to justify and explain his conduct in that on many occasions he sought Johnson upon arriving for and leaving from work but Johnson was absent or otherwise unavailable. According to appellant his duties often required that he enter the public highway in order to travel from one area of the park to another considering the park admittedly covers a vast area. On some occasions when he was observed by Johnson upon the highway he was legitimately traveling from one area to another for the purpose of checking possible game violations or returning lost dogs to their owners as was the custom of the park rangers. He denied using the state owned vehicle for purely personal purposes.
A. J. Kordish, employee of defendant appointing authority, testifying on behalf of appellant, stated he is equipment operator for the park. His duties require that he work all over the park area. He and other employees report each morning at 7:00 A.M. at the workshop situated at the South Landing in the park to receive their daily orders from Johnson. In substance he stated that while he often saw appellant report to Johnson in the morning along with the other employees, Johnson did not report every morning. Kordish further testified he could not state the precise mornings appellant failed to report and therefore could not contradict the record maintained by Johnson. He did state, however, that on occasions Johnson could not be found in the afternoon so that the employees could report to him before leaving. On numerous occasions he observed plaintiff in various areas of the park and likewise saw appellant traveling upon highways situated in or adjacent to the park but in such latter instances could not say in what endeavor appellant was then engaged.
By stipulation between counsel for appellant and Appointing Authority, it was agreed that if certain other employees, namely, Ernest Brignac, S. S. Martin, D. R. Rollins, Allen Guillory, Calvin Fontenot and Clifton Marcantel were called to testify their testimony would be substantially the same as that given by Kordish.
The Commission, as a trier of fact, obviously accepted the testimony of Johnson and rejected that of appellant. Credibility of witnesses is a matter resting within the sound discretion of the Commission on appeal by a Classified Employee. Louisiana Constitution Article 14, Section 15 (O) (1).
The testimony of Kordish substantiates to some degree that of Johnson insofar as concerns appellant's alleged failure to report each morning to Johnson as ordered. In all other respects said witness's testimony is purely negative in character.
The record is devoid of evidence to support appellant's contention that Johnson was a biased and prejudiced witness. On the contrary our own independent consideration of his testimony reveals he freely and truthfully answered all questions put to him, on many occasions giving appellant the benefit of the doubt whenever he, Johnson, was not absolutely certain as to the true facts. We are further convinced Johnson's testimony entitled it to the stamp of credibility placed thereon by the Commission in its capacity as fact finder.
We unhesitatingly conclude the record in the instant case contains substantial evidence in support of the Commission's factual determinations.
Accordingly, the judgment is affirmed at appellant's cost.
Affirmed.