449 So.2d 1062 (1984)
OFFICE OF ENVIRONMENTAL AFFAIRS
v.
McWHORTER AND ASSOCIATES, INCORPORATED.
No. 83 CA 0568.
Court of Appeal of Louisiana, First Circuit.
April 3, 1984.
*1064 Roland Huson, Legal Div., Dept. of Natural Resources, Baton Rouge, for plaintiff-appellee.
William G. Guste, Atty. Gen., Baton Rouge, John Saunders, Ville Platte, for defendant-appellant McWhorter & Associates, Inc.
Before SHORTESS, LANIER and CRAIN, JJ.
CRAIN, Judge.
This is an appeal taken by McWhorter and Associates, Incorporated (McWhorter) from an adverse finding of the Environmental Control Commission (ECC).
Water Discharge Permit Number 0051, effective October 1, 1981, was issued to McWhorter by the Department of Natural Resources (DNR) permitting McWhorter to treat and discharge reserve pit water at drilling sites throughout the State of Louisiana.
On July 30, 1982, a Statement of Charges was issued by the ECC citing numerous violations of the conditions of McWhorter's permit and the Environmental Affairs Act (EAA). A copy of the Statement of Charges was served on McWhorter, together with a summons to appear before the Commission on August 26, 1982, for an adjudicatory hearing.
McWhorter notified the ECC that it desired to contest the charges and on August 26, 1982, the ECC ordered the adjudicatory hearing before the ECC rescheduled for October 19, 20, and 21, 1982.
The adjudicatory hearing was held before the ECC and upon the review of all evidence presented, the ECC on October 28, 1982, adopted the following findings of fact and conclusions of law, and issued the following order:
FINDINGS OF FACT
1. McWhorter and Associates, Inc., operating under Water Discharge Permit Number WP0051, on or about March 5, 1982, allowed the discharge of 400 barrels of wastewater from frac tank located at the Williams Exploration Company Mecom 20 well site in the Second Bayou Oil Field in Cameron Parish.
2. The water so discharged had a COD level of 190.2 miligrams per liter *1065 and a total chromium level of .521 miligrams per liter, exceeding the permitted discharge limits.
3. This discharge entered a marsh leading to Second Bayou.
4. In seeking permission to discharge, McWhorter and Associates, Inc., had reported to the Office of Environmental Affairs that the COD level of the proposed discharge was 85 miligrams per liter and the chromium level was 0.008 miligrams per liter.
5. On or about March 10, 1982, from the Chevron Santa Fe 120 drilling site in Pointe Coupee Parish, McWhorter and Associates, Inc., discharged reserve pit water which had a COD level of 132.2 miligrams per liter, however, when requesting permission to make the discharge stated that a COD level was 44 miligrams per liter.
6. This discharge entered the natural drainage of Pointe Coupee Parish.
7. On or about May 18, 1982, from the Plattsmeir-Hulin No. 1 well site near Rayne, Louisiana, McWhorter and Associates, Inc. discharged over 30,000 barrels of reserve pit water which contained chlorides at a level substantially in excess of 500 miligrams per liter and which had a COD level of 683 parts per million, exceeding the permitted discharge limits.
8. McWhorter and Associates, Inc. failed to obtain approval for the discharge.
9. Laboratory results reported by McWhorter and Associates, Inc., in connection with the May 18, 1982, discharge indicated the COD level of 80 miligrams per liter and a chloride level of 285 miligrams per liter.
10. This discharge entered Bayou Queue de Tortue.
11. Prior to the May 18, 1982, discharge, McWhorter and Associates, Inc., utilized test methods and procedures which have not been EPA or State approved and are not listed in the latest edition of Standard Methods for Examination of Water and Wastewater, in violation of the permit.
12. McWhorter and Associates, Inc., knew or should have known the nature of the discharge.
13. McWhorter and Associates, Inc., did fail to maintain adequate records and equipment and to use only approved test procedures in its laboratory. McWhorter and Associates knew or should have known the test methods used would cause results not contemplated by the intent of the approved test procedure.
CONCLUSIONS OF LAW
1. The Office of Environmental Affairs has met its burden of proof in proving that on March 5, March 10, and May 18, 1982, McWhorter and Associates, Inc., discharged into the waters of the state waste substances which tended to cause water pollution in violation of Louisiana Law.
2. Second Bayou, natural drainage of Pointe Coupee Parish, and Bayou Queue de Tortue are waters of the state.
3. McWhorter and Associates, Inc., violated the terms and conditions of its permit and of Section 1096A of the Environmental Affairs Act in making discharges on or about March 5, 1982; March 10, 1982; and May 1982.
4. McWhorter and Associates, Inc., violated the terms and conditions of its permit and of Section 1096D of the Environmental Affairs Act by failing to report the discharge of certain substances into the waters of the state on May 18, 1982.
5. McWhorter and Associates, Inc., violated the terms and conditions of its permit by failing to maintain required and adequate records, utilizing substandard laboratory equipment *1066 and using unapproved test procedures.
6. McWhorter and Associates knew or should have known that it was violating the terms of its permit and the provisions of the Environmental Affairs Act.

ORDER
IT IS ORDERED BY the Louisiana Environmental Control Commission that:
1. Taking into consideration the law, the evidence brought forth concerning the violations and the penalty provisions established in the Louisiana Environmental Affairs Act, McWhorter and Associates, Inc. shall pay within sixty (60) days from this date, a civil penalty in the amount of $16,500.00 to the Office of Environmental Affairs through the Clerk of the Environmental Control Commission, for violations specified in the findings of fact and conclusions of law.
2. Taking into consideration the law, the evidence brought forth concerning the violations and the penalty provisions established in the Louisiana Environmental Affairs Act, the water discharge permit of McWhorter and Associates, Inc. is hereby revoked.
McWhorter appeals alleging ten assignments of error.
ASSIGNMENTS OF ERROR
1. The statutory scheme of R.S. 30:1073, does not permit the Commission to assess a civil penalty in a case where a compliance order has been issued and the respondent has not violated the compliance order.
2. The entire statutory scheme upon which this action was based is unconstitutional in that it deprives the Respondent of his day in court since the Environmental Control Commission is not a fair and impartial body as it is both administrative and fact finding and does not have the pure impartiality that judge or jury would provide.
3. The penalty assessed by the Commission if, in fact, authorized by law, was excessive.
4. The charge of excessive discharge was not proven by the State of Louisiana.
5. The State of Louisiana, through the Department of Natural Resources, made no showing at any time of any damage to the environment.
6. The charge of excessive discharge of March 10, 1982, made by the Department of Natural Resources was not proven by evidence.
7. The charge of excessive discharge of COD's on March 18,[[1]] 1982, made by the Department of Natural Resources was not proven by evidence.
8. Maintenance of inadequate records was not proven by the evidence presented.
9. The charge alleging the failure to use proper equipment was not proven by the evidence presented.
10. Respondent acted at all times in good faith and followed the law as promulgated and there is no basis for a penalty in this case.

ASSIGNMENT OF ERROR NO. TWO:
McWhorter alleges that the statutory scheme under which it was fined is unconstitutional under La. Const. of 1974, art. II and XXII.[2] These articles provide that all *1067 courts shall be open and every person shall have an adequate remedy by due process of law administered without partiality. McWhorter argues that there was never a hearing before an impartial fact finding body because the ECC is in fact the administrative agency of the Louisiana Environmental Affairs Act. Therefore to require McWhorter on appeal from the ECC to overcome the "manifest error" rule deprives McWhorter of the constitutional right to have a hearing at any stage before an impartial body. We disagree.
Our courts have held that the combination of investigative and adjudicative functions performed by the Civil Service Commission does not violate due process. cf. In Re Haggerty, 257 La. 1, 241 So.2d 469 (La.1970); Vidrine v. State Parks and Recreation Commission, 169 So.2d 641 (La.App. 1st Cir.1964), cert. denied 247 La. 348, 170 So.2d 867 (1965). The ECC is analogous to the State Civil Service Commission in that a party has the right to appeal from either of the Commission's decisions. An impartial administrative tribunal is essential for the efficient and fair implementation of the EAA. There is no showing of impartiality by the ECC that denied McWhorter due process of law.
Additionally, we see no reason why our standard of review of findings of fact of the ECC should differ from the standard we use to review decisions from the Civil Service Commission. In Michel v. Department of Public Safety, Alcoholic Beverage Control Board, 341 So.2d 1161 (La.App. 1st Cir.1976), writ denied 343 So.2d 1078 (La.1977), this court held that the factual determinations of the Civil Service Commission will not be set aside on appeal unless they are shown to be manifestly erroneous. Applying that standard in Civil Service Commission cases creates no constitutional infirmity, and we fail to see how it would create one here. Therefore, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. FIVE:
In this assignment of error McWhorter alleges that the State, through the DNR, made no showing of any damage to the environment as a result of any discharge and therefore the penalty assessment should be overturned.
A showing of actual damage to the environment is not a prerequisite for assessing a civil penalty under La.R.S. 30:1073(E)(1). This assignment lacks merit.

ASSIGNMENT OF ERROR NOS. FOUR, SIX AND SEVEN:
These assignments relate to proof at the ECC hearing of McWhorter's violations of its permit. McWhorter alleges in these assignments of error that the charge of excessive discharge in violation of its permit was not proved by the evidence presented.
The ECC found that on March 5, 1982, McWhorter discharged 400 barrels of waste water. This water had a COD level of 190.2 milligrams per liter and a chromium level of .521 milligrams per liter. The permit allowed COD discharge of 125 milligrams per liter and total chromium discharge of 0.50 milligrams per liter. Additionally, in accordance with the permit McWhorter requested permission to make the March 5 discharge and in so doing reported that the discharge would contain a COD level of 85 milligrams per liter and a chromium level of 0.008 milligrams per liter. Our review of the record convinces us that the above findings of the ECC were not manifestly erroneous.
The ECC found that on March 10, 1982, McWhorter discharged water with a COD level of 132.2 milligrams per liter in violation of its permit of 125 milligrams per liter. Additionally, McWhorter had requested permission to discharge waste water with a reported COD level of 44 milligrams per liter. This finding of the ECC is not manifestly erroneous.
McWhorter argues that the only showing of a substantial discharge was on May 18, [sic] 1982, and that showing was of a discharge of large amounts of halides. The halides consisted of both bromides and *1068 chlorides. McWhorter argues that the EAA regulations do not limit the amount of bromides that may be discharged and its permit gave permission to discharge 500 milligrams per liter of chlorides. Since there is no showing of the amount of each, it is argued that the evidence is not sufficient to support a finding of a violation of the EAA.
La.R.S. 30:1095[3] prohibits the discharge of any substance into the waters of the State without the appropriate permit or license required by regulations of the commission adopted pursuant to the Louisiana Water Control Law. We have not been cited to nor furnished with any regulation of the commission prohibiting the discharge of bromides without a permit. Therefore, McWhorter was not in violation of La.R.S. 30:1095 when it discharged bromides on May 18, 1982, without a discharge permit.
However, in determining the amount of chlorides actually discharged McWhorter admits that the testing procedure used for the intended elimination of bromides, which might interfere with getting a true reading of chlorides, neither conformed to the latest edition of Standard Methods for the Examination of Water and Wastewater nor to other DNR approved/EPA methods. The use of this testing procedure was therefore a violation of Section C-4 of Part I of McWhorter's Water Discharge Permit.[4]
The evidence presented to the ECC and reviewed by us supports the charge of excessive discharge on March 5 and March 10. Additionally, the evidence supports the charge of violation of the Water Discharge Permit in failing to use appropriate standards in determining the amount of prohibited chlorides discharged. Therefore, these assignments of error lack merit.

ASSIGNMENT OF ERROR NOS. EIGHT AND NINE:
McWhorter alleges that the charges of maintenance of inadequate records and failure to use proper equipment was not proved by the evidence presented.
Section C-5 of Part I of McWhorter's Water Discharge Permit reads as follows:
5. Recording of Results
For each measurement or sample taken pursuant to the requirements of this permit, the permittee shall record the following information:
a. The exact place, date, and time of sampling;
b. The dates the analyses were performed;
c. The person(s) who performed the analyses;
d. The analytical techniques or methods used; and
e. The results of all required analyses.
As a result of an inspection performed on May 28, 1982, by an employee of the Department of Natural Resources the following violations were discovered:
1. The exact place, date and time of sample collection was not recorded on the laboratory sheets or permanent log book.
2. The time, date, and individual performing laboratory analyses were not recorded.
3. The approved analytical technique or methods used for analyses were not documented or recorded.
4. There was no refrigerator in the office to keep samples at the required holding temperature prior to the analyses or for the refrigeration of standards.

*1069 5. There was no record that the Mettler H-80 Scale had been tested for accuracy.
6. The toaster oven used for total suspended solids drying appeared less than adequate. A thermometer was placed inside the oven, however, the inspector could not read the thermometer without first opening the door.
The inspection results were introduced into evidence by stipulation. We note that McWhorter's permit does not have a specific provision concerning equipment standards, nor has appellee cited any such provision. However, the failure to keep appropriate records was a violation of the permit. Therefore, these assignments of error lack merit.

ASSIGNMENT OF ERROR NOS. ONE, THREE AND TEN:
In these assignments of error McWhorter contests the constitutional validity and excessiveness of the penalty imposed by the ECC. McWhorter alleges that La.R.S. 30:1073(C)(3)[5] permits the ECC to assess a civil penalty only in the event of noncompliance with a compliance order. Further, to allow a civil penalty to be assessed for a violation of any requirement of the chapter is unconstitutional because a penalty cannot be assessed for a prohibition which is too broad or too vague. It is further alleged that if a civil penalty is allowed under these circumstances, the penalty assessed herein was excessive because of McWhorter's good faith in attempting to comply with the laws as promulgated.
The purpose of the compliance order found in La.R.S. 30:1073 is to require anyone who violates any section of the EAA to cease any additional unpermitted discharges. However, the violator is not relieved from liability for the original discharge.
Prior to its amendment in 1982, La.R.S. 30:1073(E)(1) provided as follows:
E. Penalties. (1) Except as otherwise provided by law, any person to whom a compliance order or a cease and desist order is issued pursuant to R.S. 30:1073(C), who fails to take corrective action within the time specified in said order or any person found by the commission or the assistant secretary to be in violation of any requirement of this Chapter, may be liable for a civil penalty, to be assessed by the commission or the assistant secretary, or court, of not more than twenty-five thousand dollars for each day of the continued noncompliance or violation and the commission, in order to enforce the provisions of this Chapter, may suspend or revoke any permit, compliance order, license, or variance which had been issued to said person. (Emphasis added)
This section clearly allows a civil penalty to be assessed for the failure to take corrective action within the time specified in a compliance order or for a violation of any requirement of the Chapter.
McWhorter alleges this statutory scheme for assessment for civil penalties is unconstitutionally broad or vague. It does not allege what Constitution is violated, what section, or how it is unconstitutionally broad or vague. We find nothing in the statute so patently unconstitutional as to cause us to note a constitutional infirmity without being cited to one.
Lastly, McWhorter contends the ECC was arbitrary and capricious in imposing an excessive penalty. The ECC assessed McWhorter a $16,500 civil penalty and revoked the water discharge permit. There are five (5) violations for which *1070 McWhorter has been assessed a penalty. Each violation carries a maximum possible civil penalty of $25,000.00. The penalty assessed by the ECC under these circumstances was not excessive. Accordingly, these assignments of error lack merit.
For the foregoing reasons the Order of the Environmental Control Commission is affirmed. All costs of this appeal are taxed to McWhorter.
AFFIRMED.
NOTES
[1] Counsel for both parties argue in the briefs that the third discharge by McWhorter took place on or about March 18, 1982. The ECC in its findings of fact and conclusions of law found the third discharge to have taken place on or about May 18, 1982. The record reflects the finding of the ECC is correct.
[2] We note that McWhorter incorrectly refers to La. Const. of 1974, arts. II and XXII in assignment of error number two. There is no art. XXII and art. II refers to Distribution of Powers. Apparently, McWhorter is referring to La. Const. of 1974, art. I, Secs. 2 and 22 which provide for due process and access to the courts.
[3] Section 1095. Permits and licenses

No person shall conduct any activity which results in the discharge of any substance into the waters of the state without the appropriate permit or license required under the regulations of the commission adopted pursuant to this Part.
[4] 4. Test Procedures

The procedures for the analysis of pollutants shall conform to the latest edition of Standard Methods for the Examination of Water and Wastewater or other permitting Agency approved/EPA approved methods.
[5] (3) Whenever the commission, the assistant secretary or an authorized representative of the assistant secretary determines that a violation of any requirement of this Chapter has occurred or is about to occur, the commission, the assistant secretary or the authorized representative of the assistant secretary shall either issue an order requiring compliance within a specified time period or the commission shall commence a civil action for appropriate relief, including a temporary or permanent injunction.