EDWARDS, Judge.
On June 4, 1984, defendant/appellant, Witco Corporation (Witco), was issued an Order by the Department of Environmental Quality (DEQ) which placed it in an assessment mode, requiring it to submit a groundwater assessment plan. The Order was issued following a statistical triggering in contamination indicators for shallow groundwater at the facility, which was reported by Witco to DEQ. Witco responded to the Order on November 6, 1984 by submitting a proposed assessment plan for groundwater evaluation prepared by groundwater consultants, Geraghty & Miller, Inc.
*1113 In December, 1987, a compliance monitoring evaluation (CME) conducted at Wit-co’s facility revealed that the plan submitted in November, 1984, as modified and approved by DEQ, had not been implemented. DEQ issued a Compliance Order and a Penalty Notice which assessed a penalty in the amount of $205,000 for Witco’s failure to comply with the June, 1984 Order. An adjudicatory hearing was held in June, 1989 before Hearing Officer, Herman Robinson. Robinson found that Witco failed to comply with the 1984 Order and was in violation of Hazardous Waste Regulations, but also found some of the charges to be redundant and/or without merit. Robinson recommended a reduced penalty against Witco in the amount of $130,000. Paul H. Templet, Secretary of DEQ, rendered a decision, in November, 1990, which adopted the findings of fact, conclusions of law and recommendations submitted by Robinson. Witco appeals that decision.
After a thorough review of the record, we conclude that the penalty imposed is amply supported by the record and accordingly, we affirm the decision.
Discussion
The findings of fact, conclusions of law and recommendations of the hearing officer provide a thorough evaluation of the charges against Witco and a well reasoned analysis of the penalty assessment. In order not to be redundant, we adopt them as our own. We add the following comments to address the underlying claim of Witco’s defense.
Witco claims that DEQ’s approval and modification of the proposed plan was unclear and that Witco, in good faith, attempted to comply with what it understood to be DEQ’s intent. Despite the clear directives of the June, 1984 Order, Witco claims that DEQ personnel met with Witco personnel and essentially “authorized” Wit-co’s noncompliance by adopting a “wait and see” approach to the groundwater assessment, in light of Witco’s pending plans to effectuate a clean closure of its impoundment. We first note that this claim is not established by the record. However, assuming arguendo that these negotiations between DEQ and Witco had occurred, Wit-co cites no authority to support its claim that such communication with DEQ personnel had the effect of relieving it of its basic obligation to comply with the clear letter of the law. Indeed, we know of no such authority. The undisputed fact remains that Witco was in an assessment mode and failed to implement an assessment plan which could adequately test the groundwater at this facility. Such failure constitutes a violation of the law and applicable regulations. Ultimately, it is Witco’s, and not DEQ’s, responsibility to ensure that there is compliance with the law. Witco failed to implement the required assessment plan; the penalty assessed is warranted. Accordingly, we affirm the decision of the Secretary. Witco is assessed all costs of this appeal.
AFFIRMED.
STATE OF LOUISIANA
DEPARTMENT OF ENVIRONMENTAL QUALITY
In the Matter of:
Witco Corporation
Proceedings under the Louisiana Environmental Quality Act
LSA-R.S. 30:2001 et seq.
DOCKET NO. GW-P-88-002
Filed Nov. 30, 1990
DECISION
1.
Witco Corporation operates a chemical manufacturing plant located on River Road near Taft, St. Charles Parish, Louisiana.
2.
The Department of Environmental Quality (hereinafter “Department”) issued to Witco Corporation Penalty No. GW-P-88-002 on February 22, 1988 for violations of the Louisiana Environmental Quality Act (hereinafter “the Act”) and for violations of regulations promulgated pursuant to the Act. Witco Corporation appealed the issuance of the penalty notice and an Adjudi *1114 catory Hearing was held on the penalty notice described herein-above on June 26 and 27, 1989, before Herman Robinson, Hearing Officer.
3.
The Hearing Officer has submitted FINDINGS OF FACT, CONCLUSIONS OF LAW and RECOMMENDATIONS which are attached hereto and incorporated herein by reference as if repeated in their entirety.
4.
I hereby adopt the FINDINGS OF FACT, CONCLUSIONS OF LAW and RECOMMENDATIONS submitted by Mr. Robinson.
5.
Payment of the Assessment of Penalty is to be made in full within twenty (20) days after receipt of this DECISION.
6.
Failure of Witco Corporation to timely pay this penalty shall result in further enforcement actions, including, but not necessarily limited to, the referral of this assessment to the Attorney General’s office for judicial collection together with all expenses related thereto.
7.
Pursuant to the provisions of Section 2024C of the Louisiana Environmental Quality Act, this DECISION may be appealed to the Court of Appeal, First Circuit, if a motion for an appeal is filed with the Office of the Secretary of the Department of Environmental Quality within thirty (30) days after receipt by Witco Corporation.
This DECISION is effective upon receipt.
Baton Rouge, Louisiana, this_day of _, 1990.
/s/ Paul H. Templet PAUL H. TEMPLET, Ph.D., Secretary
Louisiana Department of Environmental Quality
pc: Herman Robinson
Hearing Officer
Ms. Maureen O’Neill, Assistant Secretary
Department of Environmental Quality
Mr. Gordon Green, Counsel for
Department of Environmental Quality
Mr. Samuel 0. Buckley, III, Attorney for
Witco Corporation
STATE OF LOUISIANA
DEPARTMENT OF ENVIRONMENTAL QUALITY
In the Matter of:
Witco Corporation
Proceedings under the
Environmental Quality
Act LA.R.S. 30:2001 et seq.
Docket No. GW-P-88-002
FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATIONS
HERMAN ROBINSON, Hearing Officer.
JURISDICTION
This matter is adjudicated pursuant to the Louisiana Environmental Quality Act, LA.R.S. 30:2001 et seq., and the Louisiana Administrative Procedure Act, LA.R.S. 49:950 et seq.
STATEMENT OF THE CASE
This matter is before the tribunal pursuant to a request for a hearing submitted by Witco Corporation (hereinafter referred to as the “Respondent”) concerning a Penalty Notice issued by the Department of Environmental Quality (hereinafter referred to as the “Department”) on February 22, 1988. An adjudicatory hearing was held herein on June 26 and 27, 1989 concerning this matter. Present at the hearing were:
Mr. Samuel O. Buckley, Attorney at Law, representing Respondent Mr. Gordon Green, Staff Attorney, representing the Department.
As a result of its request for a hearing, Respondent was served with a “Statement of Charges” on or about March 13, 1989. In the “Statement of Charges,” Respon *1115 dent is charged with the following alleged violations:
1. Failure to comply with a June 1, 1984, Compliance Order in that the Respondent failed to submit thirty (30) day status progress reports as required by that Order;
2. Failure to install a sufficient number of monitoring wells as required by the Compliance Order of June 1, 1984, the Assessment Plan dated November 6, 1984, and the approval letter of February 12, 1985;
3. Failure to properly plug and abandon the appropriate monitoring wells and temporary borings as required by the Compliance Order of June 1, 1984, the Assessment Plan dated November 6, 1984, and the approval letter of February 12, 1985;
4. Failure to install at least one monitoring well which is hydraulically upgra-dient from the limit of the waste management area, in violation of LAC 33:V.4369.A.l;
5. Failure to install at least three monitoring wells which are hydraulically downgradient at the limit of the waste management area, in violation of LAC 33:V.4369.A.2;
6. Failure to seal the annular space of a monitoring well above the sampling depth with materials suitable to prevent contaminations of samples and the groundwater, in violation of LAC 33:V.4369.C;
7. Failure to determine the rate and the extent of the migration of the hazardous waste or hazardous waste constituents in the groundwater, in violation of LAC 33:V.4373.H.l; and
8. Failure to submit a written report containing a Groundwater Quality Assessment, in violation of LAC 33:V.4373.I.
Respondent for the most part, denies the allegations in the “Statement of Charges”, and contends that Respondent attempted to implement its understanding of what the Department wanted. The Respondent contends further that the proposed penalty is excessive.
At the conclusion of the adjudicatory hearing, the parties were allowed to submit proposed findings of fact and conclusions of law. The Hearing Officer’s response to those submittals presented in appendices A and B are incorporated herein by reference.
The entire matter is now deemed to be submitted, and the Hearing Officer submits his Findings of Fact, Conclusions of Law and Recommendations herein to the Secretary.
FINDINGS OF FACT
1.
Respondent operates a chemical manufacturing plant located on River Road near Taft, Louisiana in St. Charles Parish.
2.
At the plant, Respondent had an im-poundment that was considered to be and reported as containing potentially hazardous waste, and because of that, was required to install monitoring wells. The surface impoundment was constructed in 1971-1972 to hold wastewaters from Respondent’s chemical processes at the site.
3.
In November 1981, four monitoring wells were installed at the plant by D’Appolonia Consulting Engineers, Inc. The wells, designated MW-1 through MW-4, were installed to provide groundwater quality data relevant to the surface impoundment and a deep well injection storage tank.
4.
The location for monitoring well MW-2 was chosen to provide an upgradient data point for the plant. Monitoring wells MW-3 and MW-4 were located south of the surface impoundment as downgradient sampling points. Monitoring well MW-1 was located downgradient of the injection well tank.
5.
Respondent reported statistical significant changes in certain contamination indicators for shallow groundwater on or about June 15, 1983.
*1116 6.
Respondent was issued an Order on June 4, 1984 which placed Respondent in an assessment phase or mode.
7.
The Order required Respondent to submit an assessment plan for evaluating groundwater quality and to submit thirty (30) day status progress reports to the Department until such requirement was terminated in writing by the Department.
8.
The purpose of a status report is to state the work a facility has performed while it is in assessment. It will tell what wells and borings have been installed, the analy-ses that have been performed by the facility, problems the facility may have encountered in the assessment plan and general information relative to the assessment plan to make sure the Department is aware of the status of the facility’s progress and assessment.
9.
Respondent sent status reports to the Department on June 29, 1984, July 19, 1984, September 19, 1984, and November 6, 1984.
10.
The Department gave no writing to the Respondent authorizing Respondent to cease sending the thirty (30) day status reports. No thirty (30) day status reports were sent subsequent to the November 6, 1984 status report.
11.
In October, 1984, seven temporarily cased boreholes were installed at Respondent’s plant in the vicinity of the surface impoundment as part of a hydrogeological assessment of the site. The boreholes, designated B-1A, B-2A, B-1B, B-2B, B-3, B-4 and B-5, were installed to provide information regarding the hydrogeology at the site, as well as to provide sampling points for groundwater quality analysis.
12.
A temporary cased boring has no grout. Grouting of a well is necessary because it provides an accurate reading from a well and it prevents vertical migration of water or contaminates by the boring. The grout seals the annular space of a monitoring well above the sampling depth between the material used for the well and the wall of the borehole.
13.
On November 6, 1984, Respondent submitted to the Department an assessment plan to evaluate groundwater which was devised by Geraghty & Miller, Inc., Ground-Water Consultants.
14.
The Geraghty & Miller plan recommended that temporary cased borings B-3 and B-5 be made into permanent monitoring wells. Once those borings were made .into permanent monitoring wells and two new monitoring wells installed on the north and west sides of the impoundment, monitoring wells MW-3 and MW-4 were recommended to be abandoned. Geraghty and Miller considered MW-3 and MW-4 to be too shallow to be tapping the first permeable zone.
15.
The Geraghty & Miller plan also recommended that temporarily cased boring B-1B be converted into a permanent background monitoring well and monitoring well MW-2 should be abandoned. At the time the Geraghty & Miller plan was being constructed, monitoring well MW-2 was serving as the background well. Geraghty & Miller was in favor of installing a new well since they believed that this well did not tap the uppermost permeable zone.
16.
Geraghty & Miller recommended that all other remaining monitoring wells be abandoned. Thus, all wells installed by D’Ap-plonia and Associates were to be abandoned.
17.
Respondent stated that it would adopt the monitoring well system outlined by the Geraghty & Miller report. (See DEQ Exhibit 6, figure 8 at page 35 for a depiction of monitor well locations both actual and proposed, plus temporary cased borings locations and numbers.)
*1117 18.
The Department approved of the assessment plan devised by Geraghty & Miller with some modifications. The Department approved the installation of two (2) new monitoring wells MW-2 and MW-5 as part of the assessment plan and approved of the permanent casing of temporary cased bor-ings MW-3, MW-4, and B-4, to be developed into the assessment plan at the discretion of Respondent’s consultants.
19.
Respondent did not install wells at locations MW-2, MW-3, MW-4, and MW-5.
20.
A facility must have at least one (1) upgradient monitoring well. The purpose of an upgradient well is to monitor groundwater that is unaffected by the operations of a facility. Respondent alleges that MW-2 is the facility’s upgradient well. However, MW-2 is a well in which Ger-aghty and Miller recommended abandoning. At an inspection of the facility on December 19, 1987, the facility was reporting monitor well B-2-B as its upgradient well.
21.
B-2-B well is close to the facility and has an open annulus which allows water from the surface to move down to the screen interval, thereby giving false results about the samples of the zone being monitored.
22.
LAC 33:V.4369.A.2 requires a facility to have a minimum of three (3) downgradient wells. Respondent alleges that the facility has three (3) downgradient wells which were installed by D’Applonia and Associates in 1981. However, Geraghty and Miller had recommended abandoning those wells.
23.
Respondent reported two (2) wells as downgradient monitoring wells, B-5 and MW-4. B-5 is a temporary case boring and MW-4 is a well which Geraghty and Miller recommended to be plugged and abandoned.
24.
At the time of the December, 1987 Compliance Monitoring Evaluation (CME), MW-4, B-2B and B-5 were being monitored by the Respondent.
25.
Respondent was monitoring temporary case boring B-5 as a monitoring well. Ger-aghty and Miller had recommended that B-5 be made into a permanent monitoring well. However, B-5 was never made permanent by incorporating into the well the necessary grout to seal the annular space of the well.
26.
An assessment phase attempts to confirm that there has been a release to groundwater at a facility, and thén to attempt to delineate the extent of contamination with respect to the facility. A facility must report the rate and extent of migration of a contaminate plume if there has been a release. If there is no release, there will be nothing to determine the rate and extent thereof. However, as part of the assessment reporting requirements, the facility has to demonstrate that there is no contamination.
27.
Respondent has submitted data illustrating that there has been no release or contamination found.
28.
At the time of the December 1987 CME, Respondent had failed to properly plug and abandon appropriate monitoring wells and temporary cased borings as indicated in the Assessment Plan of November 1984 and the approval letter from the Department dated February 12, 1984.
CONCLUSIONS OF LAW
Based on the above findings of fact, the following conclusions of law are reached:
1.
The Respondent failed to submit thirty (30) day status and progress reports until such requirement was terminated in writing as required by the June 1, 1984 Order, which failure was a violation of the Order.
*1118 2.
Respondent failed to properly plug and abandon the appropriate wells and temporary borings as required by the June 1, 1984 Order, the Assessment Plan dated November 1984 and the approval letter of February 12, 1985.
3.
The acts of the Respondent were also in violation of LAC 33: Y.4369.A.1, in that Respondent failed to install at least one (1) monitoring well which is hydraulically up-gradient from the limit of the waste management area.
4.
Respondent also violated LAC 33: V.4369.A.2, in that Respondent failed to install at least three (3) hydraulically down-gradient wells at the limit of the waste management area.
5.
Respondent also violated LAC 33: V.4369.C, in that Respondent failed to seal the annular space of a monitoring well above the sampling depth with materials suitable to prevent contaminations of samples and the groundwater.
6.
Respondent knew or should have known that its actions in failing to submit thirty (30) day status and progress reports, not properly plugging and abandoning the appropriate wells and temporary borings, failing to install hydraulically upgradient and downgradient monitor wells, and failing to properly seal the annular space of a monitoring well, were in violation of the June 1, 1984 Order and the Louisiana Hazardous Waste Regulations.
7.
The Hearing officer concludes that Respondent has not violated those sections of the regulations (LAC 33: V.4373. H.l and 4373. I) cited in Paragraphs VII and VIII of the “Statement of Charges”.
PENALTY DETERMINATION
In establishing the amount of a penalty Section 2025E(3)(a) of the Act dictates that the following factors shall be considered:
(i)The history of previous violations or repeated noncompliance. Response:
The record reveals, the Respondent does not have any previous noncompli-ances.
(ii)The nature and the gravity of the violation.
Response:
The violations were moderate to severe. Respondent failed to implement an adequate monitoring system by, among other things, not properly installing monitoring wells and not following the approved assessment plan. Additionally, Respondent failed to submit thirty (30) day status reports as required by the June 4, 1984 Order. Such failure is inexcusable conduct for a large national corporation such as the Respondent.
(iii)The gross revenues generated by Respondent.
Response:
Net sales of the Respondent nationally in 1984 was $1,495,831,000.
(iv)The degree of culpability, recalcitrance, defiance, or indifference to regulations or orders.
Response:
Respondent was partially cooperative because an assessment plan was initiated, but not completed.
(v)The monetary benefits realized through noncompliance.
Response:
Monetary benefits realized through noncompliance were not adequately computed.
(vi)The degree of risk to human health or property caused by the violation.
Response:
There is no industrial or domestic use of the groundwater in the area. The Respondent made much of this fact at the hearing. The Hearing Officer notes that whether the ground water at the site is usable or not is of no moment; it is still considered to be waters of the state and based on legis *1119 lative mandate, must therefore be protected. LSA-R.S. 30:2071 et seq. Additionally, a showing of actual damage to the environment is not required for assessment of a penalty. Matter of McGowan, 533 So.2d 999 (La.App. 1 Cir.1988); Office of Envir. v. McWhorter & Associates, 449 So.2d 1062 (La.App. 1 Cir.1984).
(vii) Whether the noncompliance and surrounding circumstances were immediately reported to the Department and whether the violation or noncompliance was concealed or there was an attempt to conceal by the person charged.
Response:
There were no attempts to conceal the violations. Respondent, however, failed to submit thirty (30) day status reports as required by the June 4,1984 Order subsequent to November 6, 1984.
(viii) Whether the person charged has failed to mitigate or make a reasonable attempt to mitigate the damages caused hy his noncompliance or violation.
Response:
Respondent initiated an assessment plan. However, the assessment plan was not carried out. At the time of the adjudicatory hearing, Respondent had corrected the violations noted in the 1987 CME and which had become the object of a February 23, 1988 Compliance Order.
(ix) The costs of bringing and prosecuting an enforcement action, including staff time, equipment use, hearing records, expert assistance.
Response:
No evidence was presented by the Department on the actual costs of bringing and prosecuting this enforcement action.
RECOMMENDATIONS
The Department seeks to impose a proposed penalty of Two Hundred Five Thousand ($205,000.00) Dollars against the Respondent. The record does not support the imposition of a penalty for the unproven allegations at Paragraphs VII and VIII of the “Statement of Charges”. Accordingly it is recommended that no penalty be assessed for the alleged violations at Paragraph VII and VIII.
The allegations at Paragraph II of the “Statement of Charges” and those contained at Paragraphs IV and V are so closely related so that to penalize Respondent for the one at Paragraph II in addition to the charges at Paragraphs IV and V would be tantamount to double dipping. Accordingly, it is recommended that a penalty not be assessed for the charge at Paragraph II of the “Statement of Charges”.
After careful consideration of the facts and supporting evidence presented herein and considering the nature and gravity of the violation, the recommended civil penalty in this matter is as follows:
$ 50,000 1. Failure to submit 30 day status reports as required by the June 4, 1984 Order
$ 25,000 2. Failure to properly plug and abandon the appropriate monitoring wells and temporary borings
$ 25,000 3. Failure to install at least one (1) hydraulically upgradient well
4. Failure to install at least three (3) hydraulically downgradient wells to ox © o o
5. Failure to properly seal the annular space of a monitoring well TOTAL PENALTY $130,000 ox © o o
It is further recommended that the $741.00 cost of preparation of the transcript herein be assessed to the Respondent.
*1120 Baton Rouge, Louisiana, this 16th day of July, 1990.
/s/ Herman Robinson Herman Robinson Hearing Officer
cc: Mr. Samuel 0. Buckley, III
Mr. Gordon Green
Ms. Maureen O’Neill
APPENDIX A
RESPONSE TO PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW SUBMITTED BY THE LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY
FINDINGS OF FACT
1.
The proposed findings of fact in paragraph one (1) are adopted with exceptions that based on the evidence in the record, status reports were sent in the months of June, July, September and November 1984 with no status reports sent thereafter. Additionally, the June 1984 document was styled as an Order instead of a Compliance Order.
2.
Proposed findings of fact in paragraph two (2) are rejected and the Hearing Officer substitutes his own findings and conclusions instead.
3.
Proposed findings of fact in paragraphs three (3) through six (6) are adopted.
4.
Proposed findings of fact in paragraphs seven (7) and eight (8) are rejected.
5.
Proposed findings of fact in paragraphs nine (9) and ten (10) are rejected. The Hearing Officer will make his own findings and conclusions concerning the proposed penalty.
6.
Proposed findings of fact in paragraph eleven (11) are adopted.
7.
The proposed findings of fact in paragraph twelve (12) are rejected. What the Department “could have assessed” is not essential to a determination in this matter. The Hearing Officer will make findings, conclusions and recommendations on the appropriateness of the proposed penalty before the tribunal in this matter and not on the issue of what the Department “could have assessed”.
CONCLUSIONS OF LAW
1.
Proposed conclusions of law in paragraph one (1) are rejected and the Hearing Officer will instead substitute his own conclusions based on the evidence in the record.
APPENDIX B
RESPONSE TO PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW SUBMITTED BY WITCO CORPORATION
FINDINGS OF FACT
1.
Proposed findings of fact in paragraph one (1) through eight (8) are adopted.
2.
Proposed findings of fact in paragraphs nine (9) are rejected.
3.
Proposed findings of fact in paragraphs ten (10) through fourteen (14) are adopted.
4.
Proposed findings of fact in paragraph fifteen (15) are rejected.
5.
Proposed findings of fact in paragraph sixteen (16) are adopted.
6.
Proposed findings of fact in paragraph seventeen (17) are rejected.
7.
Proposed findings of fact in paragraph eighteen (18) are adopted.
*1121 8.
Proposed findings of fact in paragraph nineteen (19) are adopted to the extent that during the June, 1985 CME, the only three monitoring points sampled were B-5, M-4, and B-2-B. The remainder of the proposed findings in paragraph nineteen (19) are rejected as being self serving.
9.
Proposed findings of fact in paragraphs twenty (20) through twenty-one (22) are adopted. However, the Hearing Officer finds that the “other reports” did not include the required 30 day status reports.
10.
Proposed findings of fact in paragraphs twenty-three (23) through twenty-seven (27) are adopted.
11.
Proposed findings of fact in paragraphs twenty-eight (28) through thirty-one (31) are rejected.
12.
Proposed findings of fact in paragraphs thirty-two (32) through thirty-five (35) are adopted.
13.
Proposed findings of fact in paragraph thirty-six (36) and thirty-seven (37) are rejected.
14.
Proposed findings of fact in paragraph thirty-eight (38) and thirty-nine (39) are rejected. The Hearing Officer notes that even though Respondent did not conceal any of its activities, it ceased to submit thirty (30) day status reports subsequent to the November 6, 1984 report.
15.
Proposed findings of fact in paragraphs forty (40) through forty-two (42) are adopted. The Hearing Officer notes that Respondent also failed to call Mr. Maurice Lasserre and Mr. Glenn Miller. Additionally, the Department introduced no evidence on the cost of enforcement.
CONCLUSIONS OF LAW
1.
Proposed conclusions of law in paragraphs one (1) through two (2) are rejected.
2.
Proposed conclusions of law in paragraph three (3) through six (6) are adopted.
3.
Proposed conclusions of law in paragraphs seven (7) through twelve (12) are rejected.
4.
Proposed conclusions of law in paragraphs thirteen (13) and fourteen (14) are rejected.